IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | Criminal Action No. RDB-23-344 |
| AHMED M. SARY, | * | |
| *Defendant.* | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**<u>MEMORANDUM OPINION</u>**

On October 18, 2023, Petitioner Ahmed M. Sary ("Petitioner" or "Mr. Sary") pleaded guilty to one count of conspiracy to commit wire fraud affecting financial institutions, in violation of 18 U.S.C. §§ 1349, 1343. (ECF No. 65.) From April of 2020 to January of 2022, Mr. Sary engaged in a scheme to defraud the United States Small Business Administration ("SBA"), Cross River Bank, and other SBA-approved lenders to collect more than one hundred fraudulent loans out of the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loans ("EIDL") program. *See* (ECF No. 66-1). Pursuant to Federal rule of Criminal Procedure 11(c)(1)(C), the Government and Mr. Sary agreed upon a sentencing range between sixty months (five years) and 114 months (nine years and six months) of imprisonment.[1] (ECF No. 66 at 6.) On June 25, 2024, in accordance with the stipulated range in the plea agreement, this Court sentenced Mr. Sary to eighty-four months' (seven years) imprisonment, with credit for time served in federal custody between April 29, 2022, and May 13, 2022. (ECF Nos. 83, 84.) The Court also ordered three years of supervised release, a special

---

[1] In a Rule 11(c)(1)(C) plea agreement, the defendant agrees to plead guilty or no contest to a charged lesser offense, and the Government's attorney agrees to a specific sentence or sentencing range. Fed. R. Crim. P. 11(c)(1)(C). Once the Court accepts the plea agreement, the Government's recommendation is binding. *Id.*

assessment of one hundred dollars, and restitution in the amount of $17,901,279.37. (ECF No. 84.)

Mr. Sary is now forty-eight years old and is currently incarcerated at Federal Correctional Institution Schuylkill in Minersville, Pennsylvania. *Find an Inmate*, Fed. Bureau Prisons, https://www.bop.gov/inmateloc (search by register number: 98545-509) (last accessed July 15, 2026). His projected release date is February 16, 2030. *Id.*

Presently pending before the Court is Petitioner's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) (ECF No. 98 *SEALED*; as supplemented at ECF Nos. 108, 109, 110 *SEALED*) (collectively, "Motion for Compassionate Release"). Additionally, Mr. Sary has filed a Motion to Compel Ruling on his Compassionate Release Motion (ECF No. 112). The Office of the Federal Public Defender for the District of Maryland declined to supplement Mr. Sary's Motion. (ECF No. 100.) The Government has not filed any response. The Court has reviewed the relevant submissions; no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, Petitioner's Motion for Compassionate Release (ECF Nos. 98, 108, 109, 110 *SEALED*) is DENIED. His Motion to Compel Ruling on the Compassionate Release Motion (ECF No. 112) is DENIED AS MOOT.

## BACKGROUND

On October 18, 2023, Mr. Sary pleaded guilty to one count of conspiracy to commit wire fraud affecting financial institutions, in violation of 18 U.S.C. §§ 1349, 1343. (ECF No. 65.) The factual history below derives from the stipulations of the Petitioner and the Government in their Rule 11(c)(1)(C) plea agreement. *See* (ECF No. 66-1). The Court also

draws from its recitation of the facts in its Memorandum Opinion and Order denying Mr. Sary's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. *See* (ECF No. 120).

From April of 2020 through January of 2022, during the height of the COVID-19 pandemic, Mr. Sary, his co-conspirator, H.D., and others engaged in a scheme to defraud the United States Small Business Administration ("SBA"), Cross River Bank, and other SBA-approved lenders to collect several fraudulent loans from the Payment Protection Program and Economic Injury Disaster Loans program. (ECF No. 66-1 at 1.) The Paycheck Protection Program was a COVID-19 pandemic relief program whereby third-party lenders could approve and disburse SBA-backed loans to qualifying businesses to cover bills incurred resulting from the pandemic. (ECF No. 120 at 2.) The Economic Injury Disaster Loans program was a low-interest financing option for small businesses, renters, and homeowners in regions affected by declared disasters, such as COVID-19. (*Id.*)

In essence, Mr. Sary perpetrated his fraud by preparing numerous PPP and EIDL loan applications in which he claimed that the loans would benefit businesses affected by the COVID-19 pandemic. (ECF No. 66-1.) When the loans were awarded, he kept the money for himself. (*Id.*) Additionally, Mr. Sary helped other people submit fraudulent loans in exchange for a kickback for his assistance. (*Id.*) Whether for himself directly or through his kickback scheme, the basic methodology of the fraud was that Mr. Sary and his co-conspirators would grossly inflate the number of employees, monthly payroll costs, and revenue of the businesses that they claimed were suffering from the COVID-19 pandemic. (*Id.*) The loan applications also included falsified Internal Revenue Service forms and bank statements. (*Id.*)

3

Overall, Mr. Sary was involved in over eighty-five fraudulent PPP loan applications, from which at least $14,807,609.37 was disbursed as pandemic relief. (*Id.*) He also filed or helped others to file more than fifty-seven fraudulent EIDL loan applications, from which at least $3,093,670.50 was disbursed. (*Id.*) In total, Mr. Sary applied for and caused the businesses involved in this case to receive a total of at least $17,901,279,87 in fraudulently-acquired money. (*Id.*) He personally received $959,559.00 for the businesses he claimed to have owned. (*Id.*) Through the kickback scheme he ran to help others to file fraudulent loan applications, he was paid $2,714,217.22. (*Id.*) Mr. Sary used these funds to pay for multiple trips to Dubai and Egypt, during which he stayed at luxury hotels. (*Id.*) He also used some of the funds to purchase property in Egypt. (*Id.*)

On April 29, 2022, federal law enforcement arrested Mr. Sary and executed search warrants at his office, an apartment adjoining the office, and his residence. (*Id.*) Evidence related to the PPP and EIDL loan applications were collected from the office and adjoining apartment. (*Id.*) On September 26, 2023, the Government filed a one-count Information against him, charging him with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. (ECF No. 60.) Mr. Sary entered into a plea agreement with the Government on September 25, 2023. (ECF No. 66.) On October 18, 2023, he pleaded guilty to Count One of the Information. (ECF No. 65 *SEALED*.) The parties stipulated to a sentencing range of between sixty months (five years) and 114 months (nine years and six months). (ECF No. 66 at 6.) This Court sentenced Mr. Sary on June 25, 2024, to a term of eighty-four months (seven years) of imprisonment, to be followed by three years of supervised release. (ECF No. 84.)

The Court also ordered Mr. Sary to pay restitution in the amount of $17,901,279.87 and a special assessment of one hundred dollars. (*Id.*)

Mr. Sary was not held in detention prior to sentencing and had a self-surrender date of November 15, 2024. (ECF No. 98 at 2 *SEALED*.) Two days prior to that date, on November 13, 2024, he filed the pending pro se Motion for Compassionate Release. (*Id.* *SEALED*.) On February 28, 2025, he supplemented his Motion after having served three months in prison. (ECF No. 108 *SEALED*.) He then supplemented his Motion two more times: once on April 2, 2025 (ECF No. 109 *SEALED*), and a second time on June 9, 2025 (ECF No. 110 *SEALED*). Additionally, on July 22, 2025, Mr. Sary filed the pending Motion to Compel Ruling on his Motion for Compassionate Release (ECF No. 112.)

Separately, on July 3, 2025, Mr. Sary filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 111.) The Court denied that Motion by Memorandum Opinion and Order on February 9, 2026. (ECF Nos. 120, 121.) Mr. Sary has since filed an appeal of that decision to the United States Court of Appeals for the Fourth Circuit. (ECF No. 122.)

## ANALYSIS

Pursuant to 18 U.S.C. § 3582(c)(1)(A), Mr. Sary, moving pro se, seeks a reduction in sentence from eighty-four months (seven years) to time served or, alternatively, a reduction in sentence or placement on home confinement. (ECF Nos. 98, 108, 109, 110 *SEALED*.) The Court "liberally construe[s]" pro se filings and holds them "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Ordinarily, court may not "modify a term of imprisonment once it has been

5

imposed." 18 U.S.C. § 3582(c); *see also Rutherford v. United States*, 146 S. Ct. 1320, 1326 (2026) (citing 18 U.S.C. § 3582(b)). Compassionate release, as provided for by Congress, is a limited exception to that rule. *Rutherford*, 146 S. Ct. at 1326 (citing § 3582(c)(1)(A)(i)). It permits a court to modify a federal prison sentence upon finding that: (1) a petitioner has exhausted his administrative remedies; (2) there are extraordinary and compelling reasons warranting a reduction; and (3) such a reduction would align with any relevant sentencing factors set out in 18 U.S.C. § 3553(a) and any applicable policy statement issued by the United States Sentencing Commission.[2] *See United States v. Ferguson*, 55 F.4th 262, 267–68 (4th Cir. 2022) (quoting § 3582(c)(1)(A)).

## I.    Administrative Exhaustion

The First Step Act of 2018, as codified at 18 U.S.C. § 3582(c)(1)(A), permits a prisoner to seek compassionate release in the federal courts on his own behalf. *See Rutherford*, 146 S. Ct. 1328 (citing 18 U.S.C. § 3582(c)(1)(A)); *accord United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). Before he can access the federal courts, he must exhaust two steps. First, he must request that the warden of his facility seek compassionate release on his behalf. *Muhammad*, 16 F.4th at 130 (citing § 3582(c)(1)(A)). Second, he can *either* wait thirty days from making that request before filing in federal court *or* fully exhaust his administrative rights of appeal within the Bureau of Prisons. *Id.* (quoting § 3582(c)(1)(A)). Either method is sufficient. *Rutherford*, 146 S. Ct. at 1328; *Muhammad*, 16 F.4th at 130 (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th

---

[2] Section 3582(c)(1)(A) also permits a court to grant relief if a prisoner (1) met the threshold requirements; (2) is at least seventy years of age; (3) has served at least thirty years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c); and (4) the Director of the Bureau of Prisons has determined that the prisoner is not a danger to the safety of the any other person or the community. *Id.* § 3582(c)(1)(A)(ii). This provision does not apply in Mr. Crowder's case for the simple reason that he is thirty-two years old.

Cir. 2021)) (noting that Congress provided "two alternative ways to satisfy the threshold requirement"). This is a non-jurisdictional threshold requirement, however, and is forfeited if not timely raised by the Government. *Muhammad*, 16 F.4th 126, 129–30 (4th Cir. 2021) (collecting cases). A district court errs by dismissing of its own accord a pro se compassionate release motion because of a petitioner's failure to comply with the threshold requirements. *Id.* at 130 (reversing a district court's denial of a compassionate release motion for failure to comply with § 3582(c)(1)(A)'s threshold requirements).

In this case, Mr. Sary states that he exhausted his administrative remedies in his supplement to his Motion for Compassionate Release (ECF No. 108 *SEALED*) but provides no documentation to that end. Nevertheless, the Government has not filed any opposition in this case. The Court cannot dismiss Mr. Sary's pro se Motion (ECF Nos. 98, 108, 109, 110 *SEALED*) for failure to properly demonstrate administrative exhaustion. *See Muhammad*, 16 F.4th at 129–30. Accordingly, the Court proceeds to the merits of his claim for relief.

## II.    Extraordinary and Compelling Reasons

To reduce a federal prison sentence under § 3582(c)(1)(A), a federal court must find the existence of "extraordinary and compelling reasons" warranting such relief. *See, e.g., Rutherford*, 146 S. Ct. at 1326–27 (citations omitted). The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t). The Commission has identified six possible circumstances that viewed separately or together may establish "extraordinary and compelling reasons" for a sentence reduction. These reasons include:

(1) a serious medical circumstance of the defendant;

(2) a defendant who is 65 years old that suffers from serious health deterioration and has served either 10 years or 75 percent of his or her term;

(3) the death or incapacitation of an immediate family member;

(4) the defendant being a victim of abuse while in custody;

(5) other reasons of similar gravity as (1)–(4); and

(6) unusually long sentence if the defendant has served at least ten years.

U.S.S.G. § 1B1.13(b)(1)–(6).

Mr. Sary purports to offer multiple extraordinary and compelling reasons for relief. First, he claims that he suffers from serious medical conditions that merit release. Second, he points to the circumstances of his family. Third, points to his rehabilitation while incarcerated. The Court addresses each in turn.

### a. *Medical Circumstances of the Petitioner*

First, Mr. Sary's alleged medical circumstances do not amount to an extraordinary and compelling reason for compassionate release. He alleges that he has "chronic health issues, including persistent shortness of breath, chest pain, and fainting spells." (ECF No. 98 at 2–3 *SEALED*.) He also claims that on February 3, 2025, while imprisoned, he "slipped and jammed his leg between the loading dock and the truck, sustaining serious injuries to his back, pelvis, and legs." (ECF No. 108 at 4 *SEALED*.) He alleges that this injury has resulted in "significant mobility issues" for which he does not receive "adequate medical care." (ECF No. 109 at 2 *SEALED*.)

The medical circumstances of a petitioner can constitute extraordinary and compelling reasons where a defendant is "suffering from a terminal illness," U.S.S.G. § 1B1.13(b)(1)(A); where medical conditions "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected

8

to recover," *id.* § 1B1.13(b)(1)(B); where a "defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," *id.* § 1B1.13(b)(1)(C); or where a defendant faces imminent risk of being affected by an infectious disease or an ongoing public health emergency under certain circumstances, *id.* § 1B1.13(b)(1)(D).

Mr. Sary's alleged medical issues are not terminal, do not appear to require long-term or specialized medical care that is not being provided by the medical team at his prison, and he does allege that he faces an imminent risk of being affected by an infectious disease or an ongoing public health emergency. As such, he has not alleged an extraordinary and compelling reason for relief pursuant to § 1B1.13(b)(1)(A), (b)(1)(C), or (b)(1)(D).

Mr. Sary likewise does not present an extraordinary and compelling reason for relief pursuant to § 1B1.13(b)(1)(B), which concerns medical conditions that "substantially diminish[] the ability of the defendant to provide self-care . . . and from which he . . . is not expected to recover." By its terms, that provision requires a petitioner to show that medical issues make it so that he cannot provide for his own "self-care." District courts in this Circuit routinely explain that a petitioner must generally show a "'high level of disability.'" *See, e.g.,* *United States v. Shelton*, 14-cr-00016, 2026 WL 196477, at *3 (W.D. Va. Jan. 26, 2026) (quoting *United States v. Turpin*, 06-CR-00025, 2025 WL 1150728, at *3 (W.D. Va. Apr. 17, 2025)). Where mobility is "merely limited," there is no extraordinary and compelling reason for relief based on inability to provide self-care. *Id.*; *accord United States v. Smith*, 16-CR-00057, 2024 WL 126994, at *3 (W.D. Va. Jan. 11, 2024) (finding no extraordinary and compelling reason for release despite the petitioner being a double amputee who needed prosthetics to walk). Quite simply,

Mr. Sary's allegations of mobility issues fall significantly short of the necessary showing of an inability to provide-self care resulting from a condition from which he is not expected to recover. In sum, Mr. Sary's purported medical issues do not amount to an extraordinary and compelling reason for compassionate release.

### b. *Petitioner's Family Circumstances*

Second, Mr. Sary's family circumstances do not arise to the level of an extraordinary and compelling reason for compassionate release. Petitioner alleges that he is the primary caregiver for his family, which includes his five children and his wife. (ECF No. 98 at 3 *SEALED*.) He states that his youngest daughter has Type 1 diabetes and that his wife has had to undergo carpal tunnel surgery. (*Id.* *SEALED*; ECF No. 108 at 4 *SEALED*.) In a supplement to his Motion for Compassionate Release, Mr. Sary asserts that on April 6, 2025, his youngest daughter experienced a hypoglycemic episode for which she was hospitalized. (ECF No. 110 at 2 *SEALED*.) However, from that supplement, it appears that his daughter recovered from that episode. (*Id.* *SEALED*.) Additionally, he notes that his family is under financial strain because of his imprisonment. (ECF No. 98 at 3 *SEALED*.)

Pursuant to U.S.S.G. § 1B1.13(b)(3), the circumstances of a petitioner's family may constitute an extraordinary and compelling reason for relief when: the caregiver of the defendant's minor child or child that is incapable of self-care based on a mental disability or physical condition dies or becomes incapacitated, *id.* § 1B1.13(b)(3)(A); the petitioner's spouse becomes incapacitated when the petitioner would be the only caregiver, *id.* § 1B1.13(b)(3)(B); the petitioner's parent becomes incapacitated when the petitioner would be the only caregiver, *id.* § 1B1.13(b)(3)(C); or for similarly grave circumstances, *id.* § 1B1.13(b)(3)(D). The Fourth

Circuit has instructed courts to consider the Bureau of Prisons Program Statement as "helpful guidance" when considering whether a family member is incapacitated. *United States v. Rosario-Cruzado*, No. 24-6365, 2025 WL 1540932, at *2–3 (4th Cir. May 30, 2025) (unpublished) (citations omitted) That Statement provides, in relevant part, that a family member is incapacitated when she has:

> Suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or . . . [a] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse or registered partner's mental capacity or function), but may not be confined to a bed or chair.

Program Statement § 5050.50(6).

Based on Mr. Sary's own assertions, none of the family circumstances he presents amount to an extraordinary and compelling reason for relief. First, and foremost, § 1B1.13(b)(3) requires that the petitioner be the sole caregiver for his incapacitated family member. In Mr. Sary's case, his wife has attested by letter to the Court that she is the caregiver for her children. (ECF No. 108-2 *SEALED*.) Additionally, his two eldest sons appear to be adults and, in their letters to the Court, both stated that they are actively trying to help care for their mother and their other siblings. *See* (ECF No. 108-3 *SEALED*; ECF No. 108-4 *SEALED*). As such, Mr. Sary is not the sole caregiver for his children or wife and, therefore, his family circumstances do not amount to an extraordinary and compelling reason for release.

Moreover, neither Mr. Sary's wife nor his youngest daughter are incapacitated as that term is used in the context of § 1B1.13(b)(3). As this Court has recently explained, "the BOP recognizes two forms of incapacity: (1) physical incapacitation based on complete

11

confinement, and (2) cognitive incapacitation." *United States v. Fonguh*, RDB-21-334, 2026 WL 1780584, at *4 (D. Md. June 18, 2026). Neither Mr. Sary's wife, whom he alleges has carpal tunnel syndrome, nor his daughter, who has Type 1 diabetes, meets either of these forms of incapacitation. Quite simply, there is no allegation that either of these family members is physically incapacitated based on complete confinement. Rather, both carpal tunnel and Type 1 diabetes are highly manageable conditions. Additionally, there is no allegation that anyone in Mr. Sary's family suffers from cognitive incapacitation.

Finally, Mr. Sary claims that his family is suffering from financial hardship due to his imprisonment. That is not the type of family circumstance which may amount to an extraordinary and compelling reason for relief. It does not fall within any of the categories set out in § 1B1.13(b)(3). For these reasons, Mr. Sary has failed to demonstrate that the circumstances of his family amount to an extraordinary and compelling reason for relief.

### c. *Rehabilitation*

Mr. Sary's third and final alleged extraordinary and compelling reason for relief is his rehabilitation while incarcerated. 28 U.S.C. § 994(t) clearly proscribes a district court from finding that rehabilitation, on its own, amounts to an extraordinary and compelling reason for release. In this case, Mr. Sary has not presented any other extraordinary and compelling reasons to which his rehabilitation efforts could be appended. As such, he has not demonstrated any extraordinary and compelling reason for compassionate release. His Motion (ECF Nos. 98, 108, 109, 110 *SEALED*) is DENIED.

### III.    § 3553(a) Factors

Even if Petitioner had demonstrated an extraordinary and compelling reason for compassionate release or sentence reduction, such relief would nevertheless be inappropriate because it would be inconsistent with the sentencing factors set out in 18 U.S.C. § 3553(a). If a district court finds the existence of extraordinary and compelling reasons to grant relief, it must also independently determine that the relevant sentencing factors set out at 18 U.S.C. § 3553(a) support relief. *See* 18 U.S.C. § 3582(c)(1)(A); *see also Rutherford*, 146 S. Ct. at 1327 (citing § 3582(c)(1)(A)). Those factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed"; (3) "the kinds of sentences available"; (4) the sentencing guideline ranges; (5) "any pertinent policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records"; and (7) "the need to provide restitution to the victims of the offense." 18 U.S.C. § 3553(a).

In this case, the relevant sentencing factors weigh strongly against relief. With respect to the nature and circumstances of the offense, Mr. Sary perpetrated a fraud over more than eighteen months in which he filed or caused others to file fraudulent loan applications to secure funds meant to support businesses that were suffering during the height of the COVID-19 pandemic. In total, nearly eighteen million dollars was disbursed as a result of those fraudulent loan applications. Mr. Sary then used some of that money to fund trips abroad, to stay in luxury hotels, and to buy property in Egypt. This was undoubtedly a serious offense.

As concerns the length of Mr. Sary's sentence, the Government and Petitioner agreed to a sentencing range of between sixty months (five years) and 114 months (nine-and-a-half

years). The Court's sentence of eighty-four months was at the middle of that range. The term of eighty-four months also reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. A reduction in Mr. Sary's sentence would run afoul of the goals of § 3553(a), and so is not appropriate. Therefore, even if Mr. Sary had shown an extraordinary and compelling reason for compassionate release, his Motion (ECF Nos. 98, 108, 109, 110 *SEALED*) would nevertheless be denied as inconsistent with the sentencing factors of 18 U.S.C. § 3553(a).

## CONCLUSION

For the reasons stated above, Mr. Sary's Motion for Compassionate Release (ECF Nos. 98, 108, 109, 110 *SEALED*) is DENIED and his Motion to Compel Ruling on the Compassionate Release Motion (ECF No. 112) is DENIED AS MOOT.

A separate Order follows.

Date: July 23, 2026

/s/
Richard D. Bennett
United States Senior District Judge

14